## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DEBORAH JONES**, <br> 15602 Sir Edwards Drive <br> Upper Marlboro, MD 20772, <br><br> Plaintiff, <br><br> v. <br><br> **RAND BEERS**, <br> ACTING SECRETARY, <br> U.S. DEPARTMENT OF HOMELAND <br> SECURITY, <br> 3801 Nebraska Ave NW <br> Washington, DC 20016, <br><br> Defendant. | Civil Action No. ___-cv-_____-___ <br><br> **Jury Trial Demanded** |

## COMPLAINT

Plaintiff, Deborah Jones, by way of her attorney, Morris E. Fischer, Esq., hereby states

the following complaint, on information and belief formed after reasonable inquiry under the

circumstances, against Defendant Rand Beers, U.S. Department of Homeland Security.  This is

an action by Plaintiff, Deborah Jones  ("Jones" or "Plaintiff"), to seek redress for discriminatory

and retaliatory actions taken against her by the Defendant, Acting Secretary of Homeland

Security Rand Beers ("Defendant" or "Agency"), in violation of Title VII, 42 U.S.C. § 2000e, *et

seq.*, as well as the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*

**PARTIES**

1.   Plaintiff, Deborah Jones, is a current employee of the Department of Homeland Security.

2.   Defendant is the Acting Secretary of the Department of Homeland Security named in his official capacity pursuant to 42 U.S.C. § 2000e-16.

3.   Defendant does business and is located in Washington, D.C.

4.   Defendant is properly named as the head of the Agency pursuant to 42 U.S.C. § 2000e-16(c).

**JURISDICTION**

5.   This action arises under the Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, which prohibits discrimination against employees based on race, national origin, et al., and retaliation, as well as the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, which prohibit discrimination against disabled employees.

6.   Defendant does business at the United States Department of Homeland Security, 3801 Nebraska Ave., NW, Washington, DC 20016.

7.   All of the necessary administrative prerequisites have been met prior to filing the instant action, as Plaintiff has filed timely complaints of discrimination and retaliation with her federal employer, the Department of Homeland Security, and brings this claim within 90 days of the issuance of the Final Agency Decision on July 15, 2013.

8.   The District of Columbia is where the actions complained of in the present case took place, where the employment records relevant to the unlawful practices are kept by the Defendant.

9.  Therefore, this court has jurisdiction over these claims under 42 U.S.C. §§ 2000e–5 & –16 (2012).

10. Defendant resides in this judicial district, and a substantial part of the events giving rise to this action took place within this judicial jurisdiction.

11. Therefore, this court has proper venue pursuant to 29 U.S.C. § 1391 (2012).

## FACTS

12. Plaintiff is an African-American female with substantial limitations to her major life activities of breathing and walking stemming from her rheumatoid arthritis, Lupus, diabetes, and, above all, pulmonary embolism.

13. Prior to being hired by the Agency, Jones was in the uniformed service of the Navy and served in the intelligence arena for 20 years as a security officer; she performed the same duties as the position for which she was hired in June 2010.

14. After leaving the Navy, she became a contractor and worked at, *inter alia*, the Agency in an intelligence-related capacity.

15. Plaintiff was formally hired as an employee by the Agency on June 21, 2010, as a GS-12, step 1 Security Specialist.

### A.  2010 Hiring Step

16. When Jones was hired as a GS-12, she was hired as a step one despite her previous experience in a very similar position with the Agency as a contractor.

17. On April 10, 2011, Jones learned that of the 21 people hired from the certificate from which she was hired, 14 (including Jones) were African-Americans and all were given step one; the remaining 7 hires were white and were given step levels that were higher than step one.

18. This pattern is too improbable to constitute other than intentional discrimination.

-3-

19. Jones contacted the EEO Office on July 1, 2011.

**B.  Denial of Parking Space**

20. In around October 2010, Jones requested a handicapped parking space at the Nebraska Avenue Complex ("NAC") parking office.

21. Jones requested this space because of her pulmonary embolism, which limited her ability to walk and breathe.

22. Jones has handicapped license plates for her car from Maryland and Virginia and the DHS Headquarters Disability Placement Coordinator verified her medical records as well as her DMV records and concluded that the Plaintiff is a person with a valid lifelong disability.

23. On December 14, 2010, the office responsible for parking at the NAC provided Jones with a parking space that was more than a half mile from her office; it required Jones to travel practically across the entire complex.

24. The parking space was not in one of the handicapped parking spaces at the facility, many of which remained open even after her request.

25. Because of her pulmonary embolism and the attendant difficulty breathing, Jones was required to walk for 15 to 20 extra minutes each way to reach her car.

26. Jones then requested from her supervisors that they request a closer parking space.

27. They returned to tell her that her request had been denied.

28. Based on this, Jones included this in her complaint filed on December 28, 2010.

**C.  Counseling Memo**

29. On December 28, 2010, Jones met with her first line supervisor, Robert Riggan.

30. During this meeting, Riggan stated to her that she needed to take an "attitude of servitude"; Jones responded by stating that this term meant "slavery"; Riggan stated "so you do understand . . . ."

-4-

31. Jones went immediately to the EEO Office and contacted the EEO counselor.

32. Riggan wrote up a counseling memorandum based on this interaction and sent it to Jones.

33. Jones responded in writing the following day and told Riggan in her rebuttal that she would be filing an EEO complaint.

34. After this, he placed the counseling memorandum in Jones's file.

35. On January 7, 2011, Riggan provided Jones with another counseling memorandum reprimanding her for her alleged failure to monitor a security issues email inbox.

36. Riggan did not give the other five security officers who were also tasked with monitoring this inbox any reprimand.

37. Both of these memoranda were issued within two weeks of Plaintiff stating that she would go to EEO concerning Riggan's anti-African American statement, which she actually did.

38. These counseling memoranda were also in retaliation for threatening or actually contacting the EEO office to report Riggan's conduct.

39. These counseling memoranda were later used by Plaintiff's second-line supervisor, Craig Reifsteck, as the basis for denying Jones the grade increase to a GS-13.

**D. Denial of Promotion**

40. In around April of 2012, Plaintiff contacted the EEO office to amend her complaint to include a claim against Craig Reifsteck.

41. On June 21, 2011, Jones reached her one-year mark, having completed 365 days with the Agency as a GS-12.

42. Plaintiff also completed her probationary period at this time.

43. At this point, Jones was eligible for a promotion to a GS-13 position as the position was billeted as a 12/13.

44. Robert McRae, Jones's supervisor, recommended her for a promotion in May of 2011, and sent a letter to his supervisor, Craig Reifsteck.

45. Reifsteck informed Jones on around June 22, 2011, that she would not be promoted.

46. Jones was not alone in not being promoted; other similarly situated employees, including Brian Brown and Tania Pinkoske, were also denied their promotions while maintaining EEO claims against Reifsteck.

47. Jones amended her claims on June 22, 2011, to include this claim.

48. The reason given to McRae for Jones's non-promotion despite successfully completing a full year with the Agency was that there was a negative counseling statement in her file received during her probationary period.

49. Reifsteck also stated that McRae's recommendation for the promotion did not contain sufficient description to support her promotion, despite McRae's three attempts to amend the document to satisfy Reifsteck.

50. This negative counseling memorandum was discriminatory in character.

51. According to McRae, Jones had all of the experience and subject matter knowledge commensurate with a GS-13 level.

## COUNT I
## RACE DISCRIMINATION

52. Plaintiff realleges and reincorporates all prior allegations as if fully stated herein.

53. Plaintiff is African-American, a protected class under Title VII.

54. Plaintiff was given the lowest possible level of wage for her grade, a step one.

55. Of those hired at the same time, all African Americans and no Whites were given the minimum wage.

56. This is evidence of a discriminatory animus towards employees.

57. Discrimination in wages paid is an adverse action.

58. The Agency took this action against Plaintiff because of her race.

59. This failure to provide Plaintiff with a step higher that one constitutes a violation of Title VII.

60. Plaintiff also received a counseling memorandum from her supervisor, Robert Riggan.

61. This counseling memorandum was discriminatory—it requested that complainant act more slave-like; Riggan confirmed the discriminatory import of his statement to Plaintiff.

62. Riggan was motivated by a discriminatory animus based on Plaintiff's race in giving her this memorandum.

63. The memorandum was used to deny Plaintiff a promotion to a GS-13 position in June 2011.

64. This is an adverse action that was caused by the memorandum.

65. The reasons that Plaintiff was not promoted were pretextual.

66. Plaintiff suffered damages due to her lower salary because of this discriminatory act.

67. This memorandum and later denial of a promotion constitutes discrimination in violation of Title VII.

68. The Agency, through its employees Riggan and Reifsteck, acted wantonly, willfully, with malice, and with reckless indifference to Plaintiff's civil rights.

69. Because of this unlawful conduct, Plaintiff monetary damages and additionally suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, loss of self-esteem, and other personal damages.

## COUNT II
## RETALIATION

70. Plaintiff reallages and reincorporates all prior allegations as if fully stated herein.

71. Plaintiff engaged in protected EEO activity by stating to her supervisor, Robert Riggan, that she intended to file an EEO complaint and by actually filing an EEO complaint on or around December 28, 2010.

72. Robert Riggan, Defendant's employee, retaliated against her because of her threat and because she actually went to the EEO office.

73. Riggan filed multiple memoranda in Plaintiff's file because of Plaintiff's protected activity.

74. Plaintiff also filed an EEO charge against Craig Reifsteck in around April of 2011.

75. The memoranda were then used by Craig Reifsteck, plaintiff's second-line supervisor, as the basis for denying Plaintiff a promotion to the GS-13 level, which constituted an adverse action.

76. Reifsteck himself was motivated by a retaliatory animus stemming from Plaintiff's EEO complaint against him in April 2011, and also used documents created out of a retaliatory animus to deny Plaintiff a promotion to the GS-13 level.

77. But for this protected activity, Plaintiff would have been promoted to the GS-13 position in June 2011, at the conclusion of her first year.

78. This failure to promote plaintiff in June 2011 constituted retaliation in violation of Title VII.

79. The Agency, through its employees Riggan and Reifsteck, acted wantonly, willfully, with malice, and with reckless indifference to Plaintiff's civil rights.

80. Because of this unlawful conduct, Plaintiff monetary damages and additionally suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, loss of self-esteem, and other personal damages.

## COUNT III
## FAILURE TO ACCOMMODATE

81. Plaintiff reallages and reincorporates all prior allegations as if fully stated herein.

82. Plaintiff has rheumatoid arthritis, Lupus, Diabetes, and pulmonary embolism.

83. The pulmonary embolism substantially limits Plaintiff in her major life activities of walking and breathing.

84. Plaintiff requested a handicapped parking spot based on this disability and provided the Agency with documents substantiating this disability; the Agency was aware of Plaintiff's disability.

85. Plaintiff was given a parking place that was not a reasonable accommodation; it required her to walk 15–20 minutes to get to work.

86. Plaintiff made another request for a reasonable accommodation after receiving said parking space.

87. This request was denied; the Agency refused to make the accommodation.

88. Providing Plaintiff with this parking space would not have caused an undue burden; there were available parking spaces.

89. Failing to accommodate Plaintiff is discrimination in violation of the Americans with Disabilities Act.

90. The Agency acted wantonly, willfully, with malice, and with reckless indifference to Plaintiff's civil rights.

91. Because of this unlawful conduct, Plaintiff suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, loss of self-esteem, and other personal damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks the following relief:

    a.   A declaratory judgment that the conduct of the Agency challenged herein was illegal and in violation of the aforementioned laws;

    b.   Compensatory damages in an amount to be proved at trial, including compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described herein;

    c.   Reasonable attorneys' fees, expenses, and costs incurred by Plaintiff;

    d.   Such other and further relief as the Court may deem just.

## REQUEST FOR JURY TRIAL

Plaintiff requests a trial by jury on all matters properly tried to a jury.

Respectfully Submitted,

Morris E. Fischer, Esq.
Law Office of Morris E. Fischer, LLC
DC Bar No. 490369
1400 Spring Street

Suite 350
Silver Spring, MD 20910
(301) 328-7631 phone
(301) 328-7638 fax
Attorney for Plaintiff

Date: _10/11/2013_